## Clayton v. McAlpin

*Earle Hepburn,* for plaintiff.
*Benjamin O. Frick,* for defendant.

SMITH, P. J., May 27, 1938.—Plaintiff accompanied her fiance, one Lowengrund, to the Manufacturers' Country Club on the evening of October 26, 1936, and there met for the first time Mr. and Mrs. Samuel J. McAlpin, friends of Lowengrund. At the club, Lowengrund became

seriously ill (he died a short time later) and was helped to his car by a Mr. Worth and plaintiff. When Lowengrund reached his car, he slumped unconscious in the rear thereof. Plaintiff was seated in the rear of the car on the left side, with the head of Lowengrund in her lap. Mr. McAlpin, defendant, was in the driver's seat and his wife Doris was beside him on the front seat, but later climbed into the back seat. While proceeding to a doctor or the hospital, McAlpin lost his way and stopped to inquire his whereabouts. He was advised to go to the Abington Hospital and while proceeding there, on roads not familiar to anyone in the car, the accident and injury to plaintiff occurred.

Plaintiff testified that, while the car was in motion, Mrs. McAlpin shouted that Lowengrund's pulse had stopped beating, that defendant turned around to feel his pulse (she does not recall whether he turned his head or not), and that she felt the car getting off the road and looked up, saw a fence and called out to defendant to watch out for the fence, and that the car sideswiped the fence, throwing her against the door of the car and cutting her face. She testified that later defendant told her he was going 45 to 50 miles an hour at the time of the accident.

Samuel J. McAlpin, called for cross-examination by plaintiff, testified that his wife Doris climbed over into the back seat when plaintiff said that Lowengrund was dying or dead; that, when they told him that Lowengrund was getting cold and was dead and to feel Lowengrund's pulse, he put his hand around and may have turned his head for a second, and when he turned around again he saw a curve and had to cut his wheels sharply to the right to make the turn and his swerving caused the car to brush against the side of the road, which caused plaintiff to be thrown against the door. He testified that plaintiff was sitting on the very edge of the seat and had Lowengrund's head in her lap; that he did not see any fence and did not strike a fence but does not know what

he hit; and that plaintiff did not say anything to him about looking where he was going.

This same witness on being called in his own behalf testified that Lowengrund was too sick to drive and someone, he does not know who, suggested that he drive Lowengrund home; that when he slumped unconscious in the car plaintiff suggested that "we better get him to a doctor"; that while he was driving "the two girls [plaintiff and Mrs. McAlpin] had been screaming the whole time about how he was, Mrs. Clayton was saying he was dead; that Mrs. McAlpin said he had no pulse and defendant turned around and put his hand on his pulse and, when he turned back again, he noticed the curve directly ahead of him; that he might have brushed a fence alongside of the road; that his swerving threw plaintiff off her seat and, when attention was called to the fact that she was bleeding, plaintiff said: "Don't mind that, I am thinking of Bob. Try to get to the hospital."

Doris McAlpin, wife of and witness for defendant, testified that Lowengrund handed his car keys to Mr. Worth, who gave them to defendant; that she does not recall who asked defendant to drive; that after she got into the car, plaintiff said that she never had seen Lowengrund in that condition before and wanted defendant to drive him to a doctor; that she herself got into the front seat and later, when she turned around and saw plaintiff all excited, she got over into the back seat with plaintiff and Lowengrund; that both she and plaintiff were excited at the time and one of them, she does not know who, asked defendant to feel Lowengrund's pulse; that defendant put his hand out and went to turn around and the car swerved; that she does not recall plaintiff shouting at defendant to look out for the fence; that when defendant turned, the car was still going at the same rate of speed.

The jury rendered a verdict for defendant and plaintiff excepts to the fact that the trial judge charged the jury on the question of plaintiff's contributory negligence,

alleging that there was no contributory negligence shown in the case. On this question, the charge of the court is as follows:

"If you should find that Mr. McAlpin was negligent, but that Mrs. Clayton was also negligent in a way which contributed to the accident, again your verdict is for defendant.

"Now suppose we consider Mrs. Clayton. She likewise was in a most unusual situation. The man whom she was engaged to marry was dying right in her lap. It is only natural that she should be hysterical, if hysterical she was. Mr. McAlpin used that expression. But it is her duty to exercise due care just as much as it is the duty of Mr. McAlpin. A person may be negligent in so acting as to distract the attention of the driver from what he is doing. So test Mrs. Clayton's conduct in the same way. She had nothing to do with the operation of the automobile, but it is for you to say whether what she did in the back seat of that automobile showed a lack of due care under the circumstances.

"You must determine what she did and apply that test. You know that a driver cannot properly operate an automobile if there are diversions from the rear. However, diversions from the rear are excusable under some circumstances. So apply the test I have given you to the conduct of both and come to your determination."

Under the circumstances, plaintiff was naturally in an excited condition and the jury considered this phase of the case after the charge of the trial judge. Plaintiff was under a duty to consider the effect that her hysteria and shouting to her driver that Lowengrund was dying or dead would have on her driver, the defendant. The jury also considered the evidence of whether it was the plaintiff or Mrs. McAlpin who suggested that defendant feel Lowengrund's pulse and his subsequent turning around and the consequent accident to plaintiff. Such distractions to her driver, the defendant, might affect his control of the car, and if so, this would be contributory

negligence on the part of plaintiff if the jury believed that her conduct contributed to the accident. In Campbell et ux. v. Campbell, Admx., 316 Pa. 331, the court held in a per curiam opinion:

"The testimony shows that at the time of the accident the wife-plaintiff was in the front seat of the car and was examining and discussing with Miss Humphrey papers relating to the latter's admission as a student to Slippery Rock Teacher's Training College, and that she, plaintiff, had engaged defendant in so doing in such manner as to distract the latter from her duty in operating the car.

"Appellants argue this evidence was not sufficient to warrant the trial judge in submitting to the jury the question of contributory negligence. On the contrary, we are of opinion plaintiff did not make out a case clear of contributory negligence, and the trial judge could have so held had a motion for nonsuit been presented. Plaintiffs cannot be heard to complain that the question was submitted to the jury, as this was more than they deserved in the circumstances. Fortunately, the error was harmless to defendant inasmuch as the jury returned a verdict in her favor."

The jury also considered the evidence presented by defendant when called by plaintiff under cross-examination to the effect that plaintiff was sitting on the very edge of the seat with Lowenground's head in her lap, and that when he swerved she was thrown against the door or window, injuring her. The jury may have come to the conclusion that it was because of the precarious position in which plaintiff had seated herself that she was thrown against the door or window when the car swerved, and may have considered this as contributory negligence on her part. Negligence is to be determined as a matter of law only in clear cases, and where the degree of care varies with the circumstances and there exists a doubt as to the inferences to be drawn, the question of negligence is for the jury: Jackson et al. v. Curry, 117 Pa. Superior Ct. 63, 68.

The jury had the right to consider whether plaintiff's conduct, under all the circumstances, was contributory negligence, and having so determined, the motion for new trial should be dismissed.

*Order*

And now, to wit, May 27, 1938, plaintiff's motion for new trial is dismissed.